UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. _____

|  |  |
|---|---|
| **CITY OF LOWELL,** <br>     **Plaintiff** <br><br> **V.** <br><br> **GREATER LOWELL TECHNICAL HIGH SCHOOL, TOWN OF DRACUT, TOWN OF TYNGSBOROUGH, AND TOWN OF DUNSTABLE,** <br>     **Defendants** | ) ) ) ) ) ) ) ) ) ) ) ) ) |

## PLAINTIFF'S COMPLAINT

Plaintiff, City of Lowell, Massachusetts ("Lowell"), alleges as follows:

## NATURE OF THE CASE

1. This is an action brought pursuant to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, Articles VIII and IX of the Declaration of Rights of the Massachusetts Constitution, and M.G.L. c. 71, § 14E. Plaintiff seeks declaratory relief against the Defendants prohibiting further use of the current apportionment scheme to elect members to the Greater Lowell Technical High School ("GLTHS") School Committee. This electoral apportionment scheme is unconstitutional as it devalues the votes of Lowell voters by artificially limiting Lowell's representation on the School Committee in relation to the other member municipalities. This electoral system violates the "one person, one vote" principle, depriving Lowell voters of their right to fair and equal representation. Therefore, Lowell seeks to replace the present electoral scheme with one compliant with federal and state law.

## JURISDICTION AND VENUE

2. This Court maintains jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1357 and 42 U.S.C. §§ 1983 and 1988.

3. This Court possesses the authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, City of Lowell, ("Lowell"), is a municipal corporation duly organized under the laws of the Commonwealth of Massachusetts, with its principal place of business at 375 Merrimack Street, Lowell, Massachusetts 01852.

6. Defendant, Town of Dracut, ("Dracut"), is an incorporated township within the County of Middlesex in the Commonwealth of Massachusetts, with its principal place of business at 62 Arlington Street, Dracut, Massachusetts 01826.

7. Defendant, Town of Tyngsborough, ("Tyngsborough"), is an incorporated township within the County of Middlesex in the Commonwealth of Massachusetts, with its principal place of business at 25 Bryants Lane, Tyngsborough, MA 01879.

8. Defendant, Town of Dunstable, ("Dunstable"), is an incorporated township within the County of Middlesex in the Commonwealth of Massachusetts, with its principal place of business at 511 Main Street, Dunstable MA 01827.

9. Defendant, Greater Lowell Technical High School, ("GLTHS"), is a public vocational high school which serves students from Lowell, Dracut, Tyngsborough, and Dunstable, with its principal place of business at 250 Pawtucket Boulevard, Tyngsborough, Massachusetts, 01879.

## FACTS

10. Chapter 94 of the 1967 Acts of Massachusetts authorized the municipalities of Lowell, Dracut, Dunstable, Tyngsborough, and Pepperell, by popular vote or town meeting, to create a special regional vocational school district planning board ("planning board") for the purposes of establishing a regional vocational school district. See Exhibit 1.

11. Under Chapter 94, Section 3(a) of the 1967 Acts of Massachusetts, the planning board would submit a proposed agreement establishing a regional vocational school district, which would set forth, in part, "[t]he number, composition, method of selection and terms of office of the members of the regional district school committee" administering the vocational school.

12. On May 11, 1967, the planning board established the GLTHS by executing the Agreement with Respect to the Establishment of a Vocational Regional School District (the "Agreement"). See Exhibit 2.

13. Section I(A) of the Agreement sets forth how to calculate the number of representatives a member municipality can have on the GLTHS School Committee:

> "Any member municipality having a population of less than 15,000 persons according to the latest federal census taken in every year divisible by ten shall be entitled to one member; any member municipality having a population of 15,000 or more persons according to such census shall be entitled to two members; any member municipality having a population of 30,000 or more persons according to such census shall be entitled to three members; and proceeding in this manner, 15,000 persons shall be the mean increasing number which shall entitle each member municipality to an additional member, provided, however, that the city of Lowell shall not at any time be entitled to more members on the regional district school committee than the total number of members to which all the member towns which accept Chapter 94 of the Acts of 1967 are entitled."

14. Section I(C) of the Agreement governs the election procedures for candidates of GLTHS's School Committee, stating:

3

> "At the annual town elections in 1970, the town of Dracut shall elect two members, one for a term of two years and one for a term of three years; the towns of Dunstable, Pepperell and Tyngsborough shall elect one member for a term of three years. Thereafter, in every year in which the term of office of a member expires, the member town concerned shall, at its annual town election, elect a member for a term of three years. At the regular city election in 1969 the city of Lowell shall elect the number of members to which it is entitled in accordance with the provisions of subsection I(A). If the said city is entitled to either two or four members, one half of them shall be elected for a term of four years and the other half shall be elected for a term of two years; if it is entitled to three members, two shall be elected for a term of four years and one shall be elected for a term of two years; if it is entitled to five members, three shall be elected for a term of four years and two shall be elected for a term of two years; and thereafter the said city of Lowell, at every biennial election, shall elect a member or members for a term of four years.

15. Section I(A) of the Agreement dictates that the number of School Committee members representing a municipality must be based on its population as determined by the decennial federal census.

16. The Agreement, however, further restricts Lowell's representation by limiting its seats on the School Committee to the total number of seats available to the other member municipalities, regardless of Lowell's actual population.

17. At present, Lowell, Dracut, Tyngsborough, and Dunstable are member municipalities of GLTHS's regional school district. Pepperell is no longer a member municipality of the school district.

18. Approximately 80% of GLTHS's student body comes from Lowell. Students from Dracut constitute 15% of the student body. Students from Tyngsborough and Dunstable comprise the remaining 5%.

19. In accordance with the 2010 United States Census, Lowell has a total population of 106,519 residents, Dracut has a total population of 29,457 residents, Tyngsborough has a total population of 11,292 residents, and Dunstable has a total population of 3,179

residents. The total population of all the municipalities in GLTHS's regional school district is 150,447. See Exhibit 3.

20. Per the Agreement, Dracut is currently entitled to two members on the GLTHS's School Committee.

21. Per the Agreement, Tyngsborough and Dunstable are each entitled to one member, even though neither of their populations surpasses 15,000 residents.

22. As a result, Lowell is only permitted four members on the GLTHS's School Committee, despite maintaining a population which would entitle it to additional representation on the basis of the Agreement's requirement of 15,000 residents per one committee seat.

23. State legislative apportionment schemes with a maximum population deviation exceeding 10% create a prima facie case of discrimination. See Connor v. Finch, 431 U.S. 407, 418 (1977).

24. If a state electoral apportionment scheme results in a deviation exceeding 10%, state or local governments must justify the deviation "based on legitimate considerations incident to the effectuation of a rational state policy." Mahan v. Howell, 410 U.S. 315, 325 (1973); see also Brown v. Thomson, 462 U.S. 835, 842-843 (1983).

25. Deviations greater than 16.4%, however, are likely to fail regardless of justification. See Mahan v. Howell, 410 U.S. at 329.

26. The one-person, one-vote principle applies to elections for school board positions and school districts. See Hadley v. Junior College District, 397 U.S. 50 (1970); see also Kelleher v. Southeastern Regional Vocational Technical High School District, 806 F.2d 9 (1st Cir., 1986).

27. The one-person, one-vote principle prohibits the use of built in bias or discrimination mechanisms that favor particular political interests, voting districts, or geographic areas. See Hadley, 397 U.S. at 57-58.

28. By permitting municipalities to have, at minimum, one member on the GLTHS's School Committee, regardless of population and irrespective of the requirement of one committee seat per 15,000 residents, the Agreement impermissibly favors the voters of the other member municipalities over Lowell's voters.

29. By forcing Lowell to only have school committee seats equal to the number of seats the other municipalities can maintain, the Agreement contains a built-in bias or discrimination mechanism which artificially devalues the votes of Lowell's voters.

30. Even if these built-in biases are ignored, the current composition of the GLTHS School Committee, as established by the Agreement, produces unconstitutional deviations.

31. For example, assuming that the number of available GLTHS School Committee seats could only be eight (8), that Dracut was entitled to two seats, Tyngsborough and Dunstable were entitled to one each, and Lowell was entitled to the remaining four seats, the ideal population represented for each seat would be approximately 18,805 residents, assuming the GLTHS School District was at large with no divisions were made based on municipal boundaries:

| Ideal Population of voters per one GLTHS School Committee Seat | 18,805.88 residents | Ideal Population = Total Population of GLTHS School District (150,447) ÷ Number of School Committee Seats (8). |
|---|---|---|

32. The Agreement restricts Lowell to four seats on the GLTHS School Committee despite its population. As a result, the Agreement devalues Lowell voters by having each seat represent approximately 26,629 residents, a deviation from the ideal of 42%.

6

| Number of Lowell residents represented by one GLTHS School Committee Seat | 26,629.75 residents | Lowell's Voting District Population = Lowell's Total Population (106,519) ÷ Number of School Committee Seats available (4). |
|---|---|---|

33.   Based on Dracut's population, one seat represents approximately 14,728 residents. This is a deviation from the ideal of 22% and reflects the Agreement's inflation of the value of Dracut's votes.

| Number of Dracut residents represented by one GLTHS School Committee Seat | 14,728.50 residents | Dracut's Voting District Population = Dracut's Total Population (29,457) ÷ Number of School Committee Seats available to Dracut (2). |
|---|---|---|

34.   Based on Tyngsborough's population, their one seat represents the town's total population of 11,292.00 residents, producing a deviation from the ideal of 40%. This reflects the Agreement's inflation of the value of Tyngsborough's votes.

| Number of Tyngsborough residents represented by one GLTHS School Committee Seat | 11,292.00 residents | Tyngsborough's Voting District Population = Tyngsborough's Total Population (11,292.00) ÷ Number of School Committee Seats available to Lowell (1). |
|---|---|---|

35.   Based on Dunstable's population, their one seat represents the town's total population of 3,179 residents, producing a deviation from the ideal of 83%. This reflects the Agreement's inflation of the value of Dunstable's votes.

| Number of Dunstable residents represented by one GLTHS School Committee Seat | 3,179 residents | Dunstable's Voting District Population = Dunstable's Total Population (3,179) ÷ Number of School Committee Seats available to Lowell (1). |
|---|---|---|

36. The deviations produced by the member municipalities as a result of the Agreement do not constitute minor deviations as they are all greater than 10%.

37. The deviations produced by the member municipalities as a result of the Agreement are all greater than 16.4%.

38. The overall deviation of the GLTHS School District, derived from the combined deviations of the largest and smallest voting blocks, is approximately 125%, which is greater than the maximum permissible deviation of 16.4%.

| Overall deviation of the GLTHS School District | 125% | Lowell's deviation from ideal (42%) + Dunstable's deviation from ideal (83%) |
|---|---|---|

39. On July 24, 2012, the Lowell City Council passed a motion requesting an opinion from Lowell's City Solicitor assessing the constitutionality of the current electoral apportionment scheme for the GLTHS's School Committee.

40. In response, the City Solicitor issued an opinion concluding that the makeup of the GLTHS School Committee, as presently constituted per the Agreement, unconstitutionally violated the one-person, one-vote principle. See Exhibit 4.

41. The City Solicitor's opinion recommended that Lowell and the member municipalities of the GLTHS School District adopt one of five options permitted under M.G.L. c. 71, §14E in order to resolve the Agreement's constitutional issues.

42. M.G.L. c. 71, §14E permits the establishment of regional school committees through one of five options: (1) electing committee members by voters in member communities with each community's representation apportioned according to population; (2) electing members in district-wide elections to be held at the biennial state elections; (3) electing members with residency requirements in district-wide elections to be held at the biennial state elections; (4) weighing the votes of committee members according to the population

8

they represent; and (5) appointing committee members by locally elected officials such as school board members.

43. Adopting one of these five options would relieve these one-person, one-vote constitutionality issues.

44. On August 13, 2013, the Lowell City Council passed a motion adopting Option 3 of M.G.L. c. 71, §14E in order to address the constitutional deficiencies in the Agreement. See Exhibit 5.

45. On July 1, 2013, the Tyngsborough Board of Selectmen passed a motion to adopt Option 3 of M.G.L. c. 71, §14E in order to address the constitutional deficiencies in the Agreement. See Exhibit 6.

46. On August 19, 2013, the Dunstable Board of Selectmen passed a motion to adopt a resolution supporting the addition of another member for Dracut and Lowell to the GLTHS School Committee and to maintain the election of delegates in its present format per the Agreement. This is not one of the permissible options under M.G.L. c. 71, §14E. See Exhibit 7.

47. On September 10, 2013, the Dracut Board of Selectmen passed a motion to adopt Option 5 of M.G.L. c. 71, §14E in order to address the constitutional deficiencies in the Agreement. See Exhibit 8.

48. As of the present date, the defendants have failed to take any further measures towards the establishment of a new electoral apportionment scheme for the GLTHS School Committee in accordance with the one-person, one-vote principle.

49. As of the present date, the apportionment of seats on the GLTHS School Committee remains governed by Sections I(A) and I(C) of the Agreement.

## COUNT ONE

50. Plaintiff incorporates herein by reference Paragraphs 1 – 49 of this complaint.

51. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution guarantees the principle of one-person, one-vote – that is, the equal weighting of every person's vote.

52. The one-person, one vote principle applies to the election of members to GLTHS's School Committee.

53. Through the establishment of an elections system that weighs the value of the votes of Dracut, Tyngsborough, and Dunstable voters in the district more heavily than the votes of Lowell voters, the Agreement, as currently formulated, violates the one-person, one-vote principle.

54. Plaintiff's residents are harmed by the dilution of their votes and the denial of constitutionally compliant representation on the GLTHS School Committee as the result of the Sections I(A) and I(C) of the Agreement.

55. Candidates for the GLTHS School Committee, election officials, and voters are harmed through their participation in elections that are facially invalid under the Fourteenth Amendment of the United States Constitution.

## COUNT TWO

56. Plaintiff incorporates herein by reference Paragraphs 1 – 55 of this complaint.

57. Article VIII of the Declaration of Rights of the Massachusetts Constitution guarantees the right for citizens to elect their representatives to terms of office.

58. Article IX of the Declaration of Rights of the Massachusetts Constitution guarantees the right to free and fair elections where voters "have an equal right to elect officers, and to be elected, for public employments."

59. The current electoral scheme established in Sections I(A) and I(C) of the Agreement deprives Lowell voters of their constitutional right to free and fair elections under the Massachusetts Constitution by devaluing the weight of their votes for the election of members to the GLTHS School Committee in relation to the other member municipalities.

60. By denying Lowell voters the ability to equally participate in elections, Section I(A) and I(C) of the Agreement violates the Massachusetts Constitution.

## COUNT THREE

61. Plaintiff incorporates herein by reference Paragraphs 1 – 60 of this complaint.

62. The election scheme used to select members of GLTHS's School Committee as established in Sections I(A) and I(C) of the Agreement does not conform with M.G.L. c. 71, § 14E.

63. Therefore, the Agreement, as it pertains to the election and number of seats on the GLTHS School Committee, violates state law.

## RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court:

(1) take original jurisdiction over this case;

(2) enter a declaratory judgment prohibiting the further use by Defendants of the electoral apportionment scheme established in Sections I(A) and I(C) of the Agreement as it violates rights guaranteed to the Plaintiff by the Fourteenth Amendment of the

Constitution of the United States, Articles VIII and IX of the Declaration of Rights of the Massachusetts Constitution, and M.G.L. c. 71, § 14E;

(3)     order that the parties amend the Agreement so as to establish a new GLTHS School Committee with membership apportionment determined by the election of members with residency requirements in district-wide elections to be held at biennial state elections, pursuant to M.G.L. c. 71, §14E;

(4)     award the Plaintiffs the costs of this action together with their reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1988 and 1973$l$(e); and

(5)     retain jurisdiction of this action and grant Plaintiffs any further relief which may, in the discretion of this Court, be necessary, just, and equitable.

Date: June 26, 2014                                CITY OF LOWELL, PLAINTIFF

/s Christine P. O'Connor
Christine P. O'Connor, City Solicitor
BBO # 567645
Elliott J. Veloso, Assistant City Solicitor
BBO # 677292
City of Lowell Law Department
375 Merrimack Street, 3rd Fl.
Lowell MA 01852-5909
Tel: 978-674-4050
Fax: 978-453-1510
co'connor@lowellma.gov
eveloso@lowellma.gov