# EXHIBIT 4

# City of Lowell - Law Department

375 Merrimack Street, 3rd Floor • Lowell MA 01852-5909
Tel: 978.674.4050 • Fax: 978.453.1510 • www.LowellMA.gov

Christine P. O'Connor
*City Solicitor*

Kimberley A. McMahon
*1st Assistant City Solicitor*

August 24, 2012

David J. Fenton
Kenneth J. Rossetti
Maria Sheehy
R. Eric Slagle
Elliott J. Veloso
*Assistant City Solicitors*

City Manager Bernard F. Lynch
Mayor Patrick O. Murphy
Members of the City Council

RE: Motion to provide a report, options and possible recommendations regarding Section 14E of Mass. General Laws Ch. 71.

Dear Mr. Manager, Mayor Murphy, and Members of the City Council:

I write in response to a request that the "Solicitor provide a report, options and possible recommendations regarding Section 14E of Mass. General Laws Ch. 71 and for the matter entitled Kelleher v. Southeastern Regional Vocational Technical High School District (1986) (1st Federal Circuit Court of Appeals)."

Massachusetts General Laws, §14E, entitled "Election of Members of Regional District School Committees," provides a number of options regarding school district representation on a regional school committee. Those options are as follows:

1. electing committee members by voters in member communities with each community's representation apportioned according to population;
2. electing members in district-wide elections to be held at the biennial state elections;
3. electing members with residency requirements in district-wide elections to be held at the biennial state elections;
4. weighing the votes of committee members according to the population they represent; and
5. appointing committee members by locally elected officials such as school board members. Each regional school district shall designate an individual to serve as district clerk.

The apportionment options of §14E are identical to those set forth in Kelleher v. Southeastern Regional Vocational Technical High School District. See: Kelleher, 806 F.2d, 9, 12 n.17 (1986). In Kelleher, the court held that the apportionment scheme of the regional vocational school violated the one person-one vote principle. The principle in essence guarantees an individual's constitutionally protected right to cast an equally weighted vote as a mandate of the Fourteenth

August 24, 2012
City Manager Bernard F. Lynch
Mayor Patrick O. Murphy
Members of the City Council
Page 2

Amendment. Stanton v. Southern Berkshire Regional School District, et al. 28 F. Supp. 2d 37, 39 (1998). Here the court made findings that the ten-member regional school committee violated this principle because while Brockton represented almost half of the district's population (46% per cent), its citizens were electing only 20 per cent of the committee members who govern the district. Although the court took into consideration that the apportionment scheme was approved by a majority of voters, the court held that "a majority of voters cannot waive the constitutional right of a minority to an undiluted voting system." Kelleher, 806 F. 2d at 10.

In our case, the current apportionment scheme of the Greater Lowell Regional Vocational School presents similar facts, and ultimately results in a violation of the one person – one vote principle. Based on Lowell's population, as well as that of the surrounding towns, the regional school board's representation should be reflective of the following percentages: Lowell, 70%; Dracut, 20%; Dunstable, 2%; and Tyngsboro, 8% based on a total population pool of roughly 150,447 residents. Pursuant to the current makeup of the committee based on §1 of Chapter 94 of the Acts of 1967, Lowell has 4 members; Dracut has 2 members; and Dunstable and Tyngsboro, 1 member each. The result is that Lowell representation on the school board sits at 50% rather than its full 70%. Such a disparity is significant enough to result in a violation of the one person – one vote rule. As noted in a 1987 opinion letter from the Secretary of State's Office, following the Kelleher decision, some level of percentage deviation is permissible: "most court decisions in this area validate apportionment plans with maximum population deviations of less than 10 per cent from average, with 16.4 per cent maximum deviation approaching tolerable limits." (Eisenberg) May 19, 1987. Accordingly, here, Lowell's twenty per cent (20%) under representation is not, only satisfactorily reflective of its actual population, nor does not appear to be an acceptable deviation

In addressing the problem, some communities have adopted an appointive system that mirrored the existing disproportionality between a community's population and the weight of its votes. While an appointive system may prove the least disruptive to a school district if such a system essentially adopted the existing scheme, it ironically has an opposite effect on curing the one person - one vote violation. As noted in Stanton: "ironically, if the settlement has accomplished anything for Sheffield's voters, it has been to take the selection of school committee representatives out of their hands. It would be paradoxical, indeed, to say that plaintiffs have prevailed on their voting rights."

Other measures sited in §14E more directly address the heart of the one person – one vote rule, such as a weighted vote or electing a certain number of members apportioned to their population. In our current voting scheme, membership on the committee is based on a population figure of 15,000 people for every member, with Lowell essentially capped at 50% of the overall board membership. Regardless of whether this may have worked well for Lowell and the surrounding communities, such a scheme, nevertheless, violates the one person – one vote principle. It has

August 24, 2012
City Manager Bernard F. Lynch
Mayor Patrick O. Murphy
Members of the City Council
Page 3

not been lost by some judges that application of this principle in these types of cases, may not further the original goals of the one person – one vote principle.

> The one man, one vote principle arose to prevent a political, racial or like majority from stripping minority voters of their equal rights. Here these underlying factors seem conspicuously absent: the decision of Brocton voters to join a plan in which their city has less control over a regional school than the relative population of Brockton might justify, arose presumably from a conscious decision, free from political bias or racial taint, that Brockton interests would be satisfactorily served thereby. We do not know what mix of factors prompted this judgment: perhaps the proportion of children from Brockton attending the school is less than its relative population would indicate; perhaps the impact on Brockton's taxpayers is likewise relatively less; perhaps Brockton is satisfied that two representatives are adequate watchdogs given the nature of the scheme. Whatever the reasons, it seems clear that Brockton, unlike some disenfranchised minority, has been and remains perfectly capable of looking after its own interests. This seems to be a situation to which the concerns that prompted the guiding constitutional precedents are scarcely relevant.

In our case for example, while Lowell reportedly fills 74% of the total enrollment, under the state's funding formula we pay 55% of the required funding. Regardless, however, of whatever reasons initially fueled the current board's make up, the present composition appears to present a clear constitutional violation and as such should be addressed.

I trust this answers your inquiry into this matter.

Yours very truly,

*Christine P. O'Connor*

Christine P. O'Connor
City Solicitor

CPO/kd/vokeschool-motion