# EXHIBIT 7

*Dunstable*

## Minutes: Selectmen's Meeting: Monday, August 19, 2013

Present: Chairman Daniel F. Devlin, Kenneth J. Leva, Clerk and Walter F. Alterisio, Procurement Officer and Member

The meeting was called to order at 7:00PM with all members present. 1st up on the agenda was approval of minutes: 6/10/13 as amended – Selectman Alterisio to approve, 2nd and voted with all in favor. 7/8 and 7/11 Selectman Alterisio to approve as corrected – 8th Selectman Leva & Selectman Alterisio – both approved; 7/11 meeting which entered into executive session – Thursday, 7/11 – approved with all in favor. 8/12 – Selectman Alterisio & Chairman Devlin being present – Chairman Devlin to approve, 2nd and approved as written and 7/22 Selectman Leva & Selectman Alterisio – approved.

Selectman Alterisio suggested touching base on GLTHS agreement – council has voted to approve regional election. As far as Dunstable is concerned, Selectman Alterisio's presence would be to maintain relationship with Dunstable's representative and worried if elected outside, that relationship might be jeopardized. With all member communities elected each delegate to the committee, might mean a representative who wasn't in tune with Dunstable. Option of providing additional representatives for Lowell and Dracut...Rich advised he'd spoken with Dracut representative who indicated they had not taken a position, is attempting to contact Tyngsboro to learn their position. He thinks the committee itself is trying to come up with numbers that they might favor. Mechanical concern is that regional district is separate political group – don't know that individual towns could singly or collectively modify the agreement – believes it would have to go to legislature for agreement. One man one vote issue has to be addressed – Selectman Alterisio in terms of ratio for responsibility is really based now on population of students in a community but no relationship to the population of students in the school. Discussion continued on the agreement and how it relates to the community and how to reach a consolidated position. Rich suggested finding out what individual communities propose and need for consensus of agreement.

Selectman Alterisio asked the board to vote to take a position to endorse an amendment that would satisfy the one man one vote constitutional requirement but maintain the ability to elect our own representative for that committee. Selectman Leva suggested considering walking away from the contract as we have more students in Nashoba Tech than in Greater Lowell with no contract at all. Discussion continued on the aspects and difficulties with backing out of the agreement – Dunstable has always had a wonderful relationship with GLTHS. Chairman Devlin related his understanding that the issue

*Approved by the Board 09-09-2013*                              *Page 1 of 6*

Minutes: Selectmen's Meeting: Monday, August 19, 2013

has come up, not with malicious intent but to fix the unintentional non-conformance with the one-man one vote. The board agreed it was the best way to adopt the resolution for supporting addition of another member to Dracut and Lowell, while maintaining election in each community of their delegate. Discussion continued – Rich advised it's going to come to a head soon and feels that the earlier take the position, the better – vote taken: unanimous to adopt resolution supporting addition of another member to Dracut and Lowell while maintaining elections in each community of their delegate(s).

Alexander Estates open space proposal – Gerry Welch representing Carolina Properties LLC, the developer. Douglas Deschene of Deschene & Farrell of Westford, representing Caroline Properties LLC – referenced package – Carolina controls property off Lake Street and Hall Street which Mr. Welch has been bringing to Planning Board under conventional 12 lot subdivision – preliminary plan approved by Planning Board. Mr. Welch would prefer an open space project which allows for cluster, maintains open space, referred to representation in 12 lot conventional and other proposed cluster – the cluster has been seen by Planning Board but not extensively reviewed by Planning Board. In the process Mr. Welch has spoken with Conservation and Recreation commission and would like to improve the Larter Memorial Field complex by extending that area. Would like to remove the soil that is part of that facility, reduce the height such that would be brought down to the grade of the existing fields. This plan depicts, if done in accordance with what is now proposed, not to build the fields but reduce height, regrade, and seed. In addition would enhance an existing trail – by extending it – would provide handicap access down to existing pond – and would include an emergency access road as requested by Fire Department. Last thing working on, while no recreational content, have been in touch with Habitats to Humanity who would build an affordable home – to count towards our affordable housing inventory. This is where Mr. Welch would like to go with the project, in order to do that there is one little hiccup – the town's earth removal bylaw, short of rezoning the area as an earth removal district. Looking to see if this is something the board would be willing to support – is there a way to achieve, perhaps by reflecting the town owned land provision to allow it to occur. The 12 unit plan has preliminary approval – developer is then allowed to file a definitive plan – mechanism which allows for feedback before spending all kinds of money on definitive approach. Mr. Welch thinks it's desirable for everyone – opportunity to do something special for not only the town recreational facility but to the residential community as well.

Minutes: Selectmen's Meeting: Monday, August 19, 2013

Fire Chief Brian Rich advised that Fire and Police are both nervous with the access road onto Hall Street in the conventional development proposal – at fairly treacherous point – motor cycle accident last month – right at the point that egress out onto Hall Street is proposed. Selectman Alterisio asked whether, the path that is referenced, is owned by the property owner or part of old rail trail. Mr. Welch indicated that they owned that property – Selectman Alterisio reflected on original discussions about Nashua River Rail Trail. Bob Kennedy asked about the buffer zones required in times past for gravel operations – Selectman Alterisio advised each permit is independent depending on the individual operation. Bob asked whether they'd determined volume – no they haven't. They have done 50 test holes and zero water table – no issues with percolation, etc. Selectman Leva asked if they have a plan to mitigate any road issues – Selectman Alterisio noted will have to come right out Lake Street and up School Street, won't be able to come down Hall Street. Selectman Alterisio noted if there's minimum amount of earth is coming out of there, should be a short period of time. Issue is whether the town wants to buy in on expansion of the fields – if were to be lowered, sledding hill would still exist just in another location. Top of the hill is on this side of the line – some of the material in the sledding hill is town gravel. The whole point is the earth removal proceeds would fund the operation to lower the field – hoping it will break even to cover cost for loam and seed of the new field area.

Alan Chaney asked if open to question – regards to Conservation Commission he is one of 7 who met with developer with regard to wetlands – no issue per se with boundary or all that – but is with aquifer recharge area which flows at same rate year round – gravel bank feeds it – impact of taking all that gravel out of there is something that Conservation would need to look at. With regards to gravel removal, he's interested in the rough ## of yards – that's top shelf gravel, how many yards – noting when we start throwing figures out. Alan Chaney suggesting talking with recreation commission and abutters as to the impact of the trucks reminding the Selectmen and Recreation that there are 40 acres up on River Street that could be developed for fields and it might not make sense to have fields all in the same location.

Bob Kennedy asked it they'd taken into consideration the additional parking that would be required for the additional fields – is there still one way in and out from Larter Field – if you added more traffic in there might be a concern with the traffic that might relate to the new subdivision access road. Selectman Alterisio indicated he was unsure

Minutes: Selectmen's Meeting: Monday, August 19, 2013

that there was space for additional parking by Spaulding Proctor. Alan Chaney advised they can't enter into the Spaulding Proctor for additional parking.

Brook is one issue that hasn't been addressed – developers have no provisions for lessening the impact. Selectman Alterisio advised that one of the possible advantages in opening up the area would be to hopefully end the dumping. Brian addressed issue of fire and emergency response. Selectman Leva asked if Recreation & Parks – 3rd plan is 12 lot open space that would result in 10 plus acres of open space. Access for emergency personnel – Fire & Police prefer the plan with the new fields – Bob Kennedy asked if could include emergency access into the 3rd plan. Discussion continued on different aspects and whether Planning Board could waive – main road comes out onto Lake Street, other access could be via railroad bed. Mike Martin advised by skipping by and coming out via Larter and in or up Lake Street and in. Discussion continued on how each approach might work. Understand the access via Larter isn't proposed as a way in but more as an emergency exit. The group continued to discuss the access roads, emergency roads, etc. and deeding over the light shaded green area to the abutters as part of the process.

Alan Chaney back to gravel – they said that they had a very rough guess as to how much would be involved – 100,000 cubic yards estimated – Alan understood – could be as low as 75,000 or as high as 150,000 - to developer it's not a lot of gravel but for individuals who are directly impacted by the traffic @25 cubic yards per truck it's a sizable amount.

Carolina Properties eventually needs to understand if this is the process they'd like them to follow and feel there's a mechanism within the bylaw to allow it to move forward – their goal is the land would become town owned but obviously only possible if there's intent with representatives of the town to make it happen. Really the removal is the lynch pin to make this happen so if this is what people want, can move forward to make it happen; if it isn't, Mr. Welch will go back to the conventional development. Clearly need to do more research as part of the definitive design process – not yet started as wanted to see if the Selectmen would support the gravel removal. Selectman Alterisio thought the 12 conventional has a slight problem – indicating there's no way could have access onto Hall Street with the traffic issues that accompany that design. If access wasn't onto Hall Street – may in fact be able to relocate. Mike Martin asked if the area in green is the only area gravel will be removed and Chairman Devlin

Minutes: Selectmen's Meeting: Monday, August 19, 2013

questioned whether the additional fields would allow for recouping operational costs. Substantial cost for development of fields – loaming and seeding is all that the developer is proposing – just loam and seeding and grading to acceptable. Bob Kennedy asked under the conventional open space would the gravel area be owned by the town and the answer given was, no it would not – would be owned by the homeowner's association. Most open space bylaws provide for ownership by Town or a homeowners association. Discussion continued into the advantage of leaving the gravel in place for later removal by the Town at a higher cost. Discussion continued on the aspects of removing the gravel. Brian advised one of the things, if they don't remove the gravel, are looking at twelve (12) houses as opposed to ten (10). Kevin Welch asked where the affordable housing unit would be placed within the 12 unit sub-division, and when they responded there wouldn't be one, Kevin advised there has to be to meet requirement of the town's bylaw.

Rich advised that in order to allow for gravel removal have to address – Selectman Alterisio noted the exception is the Town can do on town owned property – now have to balance the mitigation of 25 cubic yard trucks for 100,000 or more cubic yards. Selectman Alterisio felt entering and exiting through the Larter parking lot might be the best approach. Selectman Alterisio also noted that gravel removal operations are customarily shut down from November 1st to April 1st.

In working with planning, wanted to see that neighbors wanted pushed back and providing buffers – next how to eliminate restricted access .. plan would be to either leave here tonight or come back at a later time. Bob Kennedy advised he'd like to protect the cold water spring – small in terms of development, but could put a 12 lot development maintaining open space, etc. without removing the gravel. Board will take under advisement, leaning to other boards for their input and assistance in working this through. Chairman Devlin advised BOS would work toward getting back to them in another two weeks. Mr. Duchesne advised the gravel removal would be done under a very specific and considerate plan. Mr. Welch advised they've had a lot of experience developing property – like in Sterling where they removed a huge amount of gravel next to the Police Station – would like to proceed with something somewhere around Labor Day.

Chairman Devlin advised on his discussion with Maria Amodei relative to materials, etc. on McLoon property, and will report with any findings.

*Approved by the Board 09-09-2013*                                            *Page 5 of 6*

Minutes: Selectmen's Meeting: Monday, August 19, 2013

Selectman Alterisio referenced the MIIA Health Benefits Trust contract but was a little reluctant to sign the Business Associate contract without having Town Counsel's review; secretary will transmit for approval. The Board then approved Bonnie's request for appointment of Danice Palumbo as Temporary Tax Collector from September 12th to September 24th and made subject appointment.

The Board discussed the proposal from Carolina Properties LLC further noting parking is definitely an issue even with existing facility – all comes within the planning – but the real issue is in order for the material to come out it has to be town owned – what he's suggesting is to excavate material he owns – must turn over to the town if it's to come out of there – it was his thought that what he was going to make as a result of the removal would help to pick up the cost of the development including the field area. If he wants that 10 unit lot – the area they're pulling the material out has to be town owned unless the bylaw is revised to allow its removal. In order to go with the process being suggested, the town would have to own it and would need to receive the proceeds from the removal. Selectman Alterisio will write up Board's opinion conventional 12 is out – next would prefer recreational area but concerned with the approach onto Hall Street.

The Board voted unanimously to authorize Chairman Daniel F. Devlin to endorse the necessary paperwork for FEMA-411-DR-MA – Chairman Devlin will meet with Terri to take care of signatures on the appropriate paperwork.

Treasurer's warrants were reviewed and signed, and meeting adjourned at 8:40PM after appropriate motion by Selectman Leva, 2nd and vote.

Respectfully submitted,

Danice N. Palumbo,
Board Secretary